UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                Plaintiff,

                -against-

ROGER CORBIN,

                              Defendant.

-----------------------------------------------------------X

**<u>MEMORANDUM OF
DECISION AND ORDER</u>**
09-MJ-0444 (ARL)

**APPEARANCES:**

**BENTON J. CAMPBELL, UNITED STATES ATTORNEY**
**EASTERN DISTRICT OF NEW YORK**
610 Federal Plaza
Central Islip, NY 11722
        By:     Richard P. Donoghue, Assistant United States Attorney
                 John J. Durham, Assistant United States Attorney

**LAW OFFICES OF THOMAS F. LIOTTI**
Attorneys for the Defendant
600 Old Country Road, Suite 530
Garden City , NY 11530
        By:     Thomas F. Liotti, Esq., Of Counsel

**DAVID A. BYTHEWOOD, ESQ.**
Attorney for the Defendant
85 Willis Avenue, Suite J
Mineola , NY 11501

**LEVINE SULLIVAN KOCH & SCHULZ, L.L.P.**
 Attorneys for Newsday LLC and News 12 Company d/b/a News 12 Long Island
321 West 44th Street, Suite 510
New York, NY 10036
        By:     David A. Schulz, Esq.
                 Nicole A. Auerbach, Esq., Of Counsel

**CABLEVISION SYSTEMS CORPORATION**
1111 Stewart Avenue
Bethpage, NY 11714
       By:    Paul Oetken, Esq.
              Jeff Grossman, Esq., Of Counsel

**SPATT, District Judge:**

By order to show cause dated May 20, 2009, the defendant, Roger Corbin ("Corbin") petitions the Court, among other things, to preclude certain media outlets from publishing photographs of his arrest and subsequent transport in handcuffs and to prohibit the United States Government (the "Government") from staging "perp walks" of criminal defendants. The term "perp walk" is colloquially used to refer to the practice whereby law enforcement agencies handcuff criminal defendants, regardless of the crime charged or circumstances of their arrest or surrender, for the purposes of transport from one facility to another.

From 1995 to the present date, Corbin has served as a Nassau County Legislator for the Second Legislative District of Nassau County, covering New Cassel, Westbury and portions of East Garden City, East Meadow, Hempstead, Hicksville, Lakeview, Old Westbury, Rockville Centre, Uniondale and West Hempstead. Accordingly, the Court considers Corbin to be a public figure and a newsworthy individual.

Corbin was charged on the basis of an eighteen page criminal complaint filed on May 5, 2009. The complaint alleges that between April 2006 and April 2008, the

defendant failed to report as income on his federal tax returns approximately $226,000

deposited into bank accounts in his name.  The complaint further alleges that Corbin

received these funds in the form of 82 checks from a New York real estate developer.

Further, that the defendant's failure to report the funds resulted in a total federal tax

loss of approximately $70,824 for tax years 2005, 2006 and 2007.  In addition, the

defendant was charged with lying to federal agents during an initial interview when he

denied that he retained any of the funds for his personal use.  Corbin was arraigned on

May 6, 2009 and the complaint was unsealed by United States Magistrate Judge

Arlene R. Lindsay on that date.

By the present motion, Corbin seeks an order of the Court:

(A) permanently enjoining, restraining, and stopping Newsday, News 12 and
the United States Government from issuing press releases, mug shots or "perp walk"
photos, videos or images of the defendant in handcuffs; and
(B) permanently enjoining the United States Government from conducting
"perp walks" or issuing other information of the defendant aside from pedigree
information and except as directed by the Court; and
 (C) immediately conducting a hearing to determine whether Rule 6 of the
Federal Rules of Criminal Procedure has been violated and whether the New York
Rules of Professional Conduct § 3.6 has been violated; and
(D) holding the United States Government in contempt pursuant to Federal
Rules of Criminal Procedure Rule 6(e)(7); and
(E) dismissing the charges against the defendant and sealing the record.

Upon presentation of the motion, the Court heard preliminary argument from

the parties, as well as from counsel for Newsday and News 12.  The Court denied the

issuance of a temporary restraining order and adjourned the matter to May 29, 2009.

**I.      As to Corbin's Motion to Enjoin Newsday and News 12**

"*[I]t is the trial judge's primary responsibility to govern judicial proceedings so as to ensure that the accused receives a fair, orderly trial comporting with fundamental due process.*"  *United States v. Noriega*, 917 F.2d 1543, 1548 (11th Cir. 1990) (emphasis in original).  In the seminal case, *Nebraska Press v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976), the Supreme Court of the United States, recognizing that the right to trial by an impartial jury and the right to a free press are in tension in sensational criminal cases, declined to assign a priority of rights to be applied in all circumstances.  *Nebrasksa Press*, 427 U.S. at 560–61.  *Nebraska Press* arose out of the 1975 murder of six members of the Kellie family in Sutherland, Nebraska, a town of approximately 850 people.  *Id.* at 542.  Due to the widespread media attention, the County Attorney and counsel for the defendant jointly requested that the County Court issue a restrictive order prohibiting disclosure of testimony or evidence to the public due to the likelihood that the news coverage would make it difficult, if not impossible to impanel an impartial jury.  *Id.*  The case was transferred to the State District Court, who allowed members of the press to intervene and entered its own restrictive order prohibiting reporting of certain matters until after a jury had been impaneled because of a "clear and present danger" that pretrial publicity would impinge the defendant's right to a fair trial.  *Id.* at 543–44.  The State Supreme court upheld the order in modified form, noting that under Nebraska law, the defendant

would be tried within six months of his arrest and a change of venue could move the trial only to adjoining counties. *Id.* at 545.

On appeal, the United States Supreme Court began by noting a blemished history in which public passions threatened the accused's Sixth Amendment right to a fair trial, stating that "the measures a judge takes or fails to take to mitigate the effects of pretrial publicity . . . may well determine whether the defendant receives a trial consistent with the requirements of due process." *Id*. at 551–56. On the other hand, the Court noted that the free press guarantees provided by the First Amendment "afford special protection against orders that prohibit the publication or broadcast of particular information or commentary orders that impose a 'previous' or 'prior' restraint on speech." *Id.* at 556. However, recognizing that the freedom of the press is not absolute, the Court cautioned that "[t]he extraordinary protection afforded by the First Amendment carry with them something in the nature of a fiduciary duty to exercise the protected rights responsibly a duty widely acknowledged but not always observed by editors and publishers." *Id.* at 560.

In determining whether "'the gravity of the 'evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger,'" the Court considered three major factors. *Id.* at 562 (quoting *United States v. Dennis*, 183 F.2d 201, 212 (2d Cir. 1950), *aff'd* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). In addition to reviewing the precise terms of the restraining order,

the Court examined: (1) the nature and extent of pretrial news coverage; (2) whether other measures would be likely to mitigate the effects of unrestrained pretrial publicity; and (3) how effectively a restraining order would operate to prevent the threatened danger. *Id.* at 563.

Although the Court concluded that the trial judge was justified in finding that the intense publicity of the case might impair the defendant's right to a fair trial, it found that the trial court utterly failed to examine and make factual determinations as to whether measures short of prior restraint would have guaranteed the defendant a fair trial. *Id.* at 563–4, 569 ("We cannot say on this record that alternatives to a prior restraint on petitioners would not have sufficiently mitigated the adverse effects of pretrial publicity so as to make prior restraint unnecessary."). Further, the Court found that given the impracticalities in policing pretrial restraining orders and predicting what material would in fact undermine juror impartiality, the restraining order itself was not a clear solution in protecting the defendant's rights. *Id.* at 567. Accordingly, the Court invalidated the restraining order.

Among the permissible alternatives that the trial court might have considered were: a change of trial venue to a place less exposed to the intense publicity; postponement of the trial to allow public attention to subside; searching questioning of prospective jurors; the use of jury instructions regarding the sworn duty of each juror to decide the issues only on evidence presented at trial; and in necessary, the

sequestration of impaneled jurors to dissipate the impact of pretrial publicity and emphasize the elements of the jurors' oath. *Id.* at 563–64. In addition, the Court noted that in appropriate cases, trial courts may limit what attorneys, law enforcement, and witnesses may say to anyone. *Id.* at 564, 569 ("It is significant that when this court has reversed a state conviction, because of prejudicial publicity, it has carefully noted that some course of action short of prior restraint would have made a critical difference.").

Further, closer to home, in *United States v. Quattrone*, 402 F.3d 304 (2005), the Second Circuit held that a trial court's order restraining the press from publishing names of jurors sitting on a non-anonymous panel was an impermissible prior restraint on free speech. In reiterating the three factors to be considered under *Nebraska Press*, the court noted that "[w]here the category of speech otherwise received First Amendment protection . . . courts subject prior restraints on speech or publication to exacting review." Similarly, in *Noriega*, the Eleventh Circuit stated that "[n]otwithstanding the District Court's broad discretion to balance First Amendment interests with a criminal defendant's Sixth Amendment right to a fair trial, a conclusory representation that publicity might hamper a defendant's right to a fair trial is insufficient to overcome the protections of the First Amendment." *Noriega*, 917 F.2d at 1549.

On the present record, the Court makes the following findings of fact: (1) the

defendant in this case is a local public official and a newsworthy subject; (2) it is undisputed that the media organizations Newsday, the publisher of a daily newspaper, and News 12, a cable news network serve Nassau County and surrounding areas, including the region represented by the defendant; and (3) media reports regarding the criminal charges against the defendant are likely to be seen, read, or "of interest" to local citizens, who are included in the pool of potential jurors for this district. Further, recurring images of the defendant being transported in handcuffs carries with it some risk that the defendant's right to a fair trial will be jeopardized.

On the other hand, the Court takes judicial notice of the fact that the populous Eastern District of New York includes not only the County of Nassau, but also Kings, Queens, Richmond and Suffolk Counties. *See General Information Webpage for the United States District Court for the Eastern District of New York, Geography*, available at *http://www.nyed.uscourts.gov/General_Information/Mission_Statement/ mission_statement.html*. In addition, the region encompassed by this district is largely "metropolitan," with more than seven million people residing in its five counties. *Id.*; *see United States v. Bowe*, 360 F.2d 1, 11 (2d Cir. 1966) ("'[F]requently in this large metropolitan district prospective jurors show little recall of past widely publicized matters . . . .'" (quoting *United States v. Kahaner*, 204 F. Supp. 921, 924 (S.D.N.Y.1962)); *United States v. Griffin*, No. 94CR63, 1996 WL 140073, *1 (S.D.N.Y. March 27, 1996) (noting that "courts have long held that in a large

metropolitan area, prejudicial publicity is less likely to endanger a defendant's right to a fair trial"

Further, the Court finds that publicity has not been ubiquitous. By defense counsel's own account, the matter has not been widely publicized by other local news sources, such as the New York Times, the New York Post, and the New York Daily News, to name the major other newspapers. (Tr. Proceedings on Motion for Order to Show Cause, May 20, 2009, at 7:8–12); *Memorandum of Law in Further Support of Defendant's Order to Show Cause*, May 26, 2009 at 4–5. In addition, the trial and jury selection in this matter is, with reasonable certainty based on past experience, at least six months away. This substantial time lapse will permit the initial publicity stemming from Corbin's arrest to subside. *2008 Federal Court Management Statistics of the Administrative Office of the United States*, available at http://www.uscourts.gov/cgi-bin/cmsd2008.pl, (reporting 19.5months to be the median time from filing to disposition of criminal felony matters in the Eastern District of New York); *see Bowe*, 360 F.2d at 11 ("Both the Supreme Court and this court have indicated that the length of time between the publication of adverse publicity and the empanelling of the jury is a significant factor in assessing claims of prejudice resulting from pre-trial publicity."). Accordingly, the Court finds that the defendant has failed to establish that the publicity in this case would pose any difficulty in impaneling an impartial jury of twelve persons and alternates in this expansive, densely populated

district.

These facts, combined with the alternatives available to the Court in empaneling a fair and impartial jury, including the use of screening questionnaires, a thorough and searching voir dire, and perhaps affording additional peremptory challenges to the defendant, lead the Court to conclude that the prior restraint requested is unnecessary. *See Griffin*, 1996 WL 140073, at *2 ("Courts have long held that a thorough voir dire examination of potential jurors is a sufficient device to eliminate from jury service both (1) those so affected by exposure to pre-trial publicity and (2) those with some knowledge of the facts and circumstances of the case that they cannot fairly decide issues of guilt or innocence."); *see also Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995) ("[T]he Constitution does not require ignorant jurors, only impartial ones."), *cert. denied*, 515 U.S. 1136, 115 S.Ct. 2566, 132 L.Ed.2d 818 (1995).

The defendant also raises the issue of the effect of pretrial publicity on non-sequestered grand jurors, who evidently are presently conducting an investigation in this case. First, the Court notes that grand jurors are instructed to disregard media coverage on matters before them. Second, no indictment has been handed down, and nothing precludes the defendant from making a motion to dismiss any future indictment if it appears that the publicity in this case interfered with the grand jury proceedings. It would be unprecedented to restrain the media because of potential

effects on a grand jury investigation.  The proper question here is the effect of publicity on sitting an impartial petite jury and the necessity of prior restraint in ensuring a fair trial .

Although the Court is troubled by the repeated use of images of Corbin in handcuffs despite the availability of numerous other photographs from his years of service as a public official, it is simply without authority to censor the press in this matter and cannot instruct the press as to what images are newsworthy.  In the context of this criminal matter, the Court cannot consider whether the images may have other negative effects, such as injury to the defendant's public image or reputation. Accordingly, the Court finds that a prior restraint on the publication of images of the defendant in handcuffs is unnecessary to safeguard his right to a fair trial.

**II.**     **As to the Corbin's Motion to Enjoin the United States Government**

    A.     As to "perp walks"

Corbin seeks an order of the Court permanently enjoining the United States Government from conducting "perp walks" in any case.  Corbin's request presents a non-justiciable issue on the ground that it is moot.

Courts may exercise jurisdiction only over live cases and controversies. *Independence Party of Richmond County v. Graham*, 413 F.3d 252, 255 (2d Cir. 2005).  Thus, if the Court cannot grant any effectual relief to a prevailing party, it must dismiss the case, rather than issue an advisory opinion.  *See ABC, Inc. v. Stewart*, 360

F.3d 90, 97 (2d Cir. 2004) (discussing mootness on appeal)).  In *Lillbask v. State of Conn. Dept. of Educ.*, 397 F.3d 77 (2d Cir. 2005), the Second Circuit explained:

> [A]t all times, the dispute before the court must be real and live, not feigned, academic, or conjectural.  When the issues in dispute between the parties are no longer 'live,' a case becomes moot, and the court–whether trial, appellate, or Supreme–loses jurisdiction over the suit, which therefore must be dismissed . . . .

*Lillbask*, 397 F.3d at 84.

Further, the conduct Corbin complains of is not subject to the generally recognized exception encompassing matters that are capable of repetition yet evading review.  This exception applies only where: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration; and (2) in the absence of a class action, there is a reasonable expectation that the *same* complaining party will be subjected to the *same* action again.  *Graham*, 413 F.3d at 256; *Lillbask*, 397 F.3d at 85.  A reasonable expectation of repetition "must be more than 'a mere physical or theoretical possibility.'" *Id.* at 86 (quoting Murphy v. Hunt, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (per curiam)).

Here, Corbin's arrest has already occurred and it is unlikely to be repeated in connection with the present case.  In addition, there is no reasonable expectation that Corbin will be arrested on a different charge and subjected to another "perp walk." *See Spencer v. Kemna*, 523 U.S. 1, 18, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) (finding that the petitioner failed to show challenged revocation of parole was capable of

repetition, yet evading review because, *inter alia*, petition failed to demonstrate a reasonable likelihood that he would once again be paroled and have that parole revoked); *Reimers v. State of Oregon*, 863 F.2d 630, 632 (9th Cir. 1989) (mootness exception does not apply where conduct would recur only if appellant were to commit another crime and return to prison). *But see United States v. Howard*, 480 F3d 1005 (9th Cir. 2007) (ongoing government policy of shackling pretrial detainees for initial court appearance evaded review because "a future charge assuredly will be brought against someone, and the shackling policy would similarly escape review" and interests were analogous to those driving class actions); *Demery v. Arpaio*, 378 F.3d 1020, 1027 (9th Cir. 2004) (creating an exception to *Spencer* where the plaintiff introduces evidence that he has been detained "on more than one occasion").

Counsel for the defendant intimates that this is a proper case in which to address the propriety of the Government and the media colluding in some manner to stage "perp walks" on any occasion and in other matters. However, "the possibility that other persons may litigate a similar claim does not save th[e] case from mootness." *Lane v. Williams*, 455 U.S. 624, 634, 102 S.Ct. 1322, 1328, 71 L.Ed.2d 508 (1982). As Corbin's "perp walk" has already occurred and is unlikely to be repeated, this is not a proper case in which to address the issue. In addition, significantly, the Court notes that the so-called "perp walk" is a long-standing practice followed by law enforcement personnel to ensure the appearance of an arrestee at an

arraignment and to safeguard this important process.  The Court declines the

defendant's invitation to issue an advisory opinion on the legality of the practice.

> **B.**     As to the Alleged Violation of the New York State Rules of
> Professional Conduct and the Federal Rules of Criminal Procedure

The Supreme Court has made a clear distinction between restraints on the press

and restraints placed on parties to a proceeding.  *Gentile v. State Bar of Nevada*, 501

U.S. 1030, 1065–66, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) ("'Collaboration

between counsel and the press as to information affecting the fairness of a criminal

trial is not only subject to regulation, but is highly censurable and worthy of

disciplinary measures.'" (quoting *Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct.

1507, 16 L.Ed.2d 600 (1966)).  In *Gentile*, the Court explained that the speech of

lawyers participating in pending cases may be regulated under a less demanding

standard than that established for regulation of the press under *Nebraska Press*.

*Gentile*, 501 U.S. at 1074, 111 S.Ct. 2720, 115 L.Ed.2d 888 .

In addition to the injunctive relief he seeks, Corbin requests an immediate

hearing to determine (1) whether Federal Rule of Criminal Procedure 6 has been

violated; and (2) to determine whether Rule 3.6 of the New York Rules of Professional

Conduct has been violated.

As an initial matter, the Court notes that Federal Rule of Criminal Procedure 6

relates entirely to proceedings before a grand jury and the secrecy imposed on certain

persons participating in the grand jury, including attorneys for the Government.  *See*

Fed. R. Crim. P. 6(e)(2)(B).   The defendant contends only that "upon information and belief, the United States Attorney's Office has conducted and is conducting a Grand Jury investigation" and that "the United States Government has issued grand jury subpoenas . . . [and] [i]n so doing they have once again informed the media of the nature and scope of their investigation."  However, the defendant has not supplied evidence of any release of secret grand jury information.

None of the articles issued by Newsday and supplied to the Court by the defendant reference identities or testimony of grand jury witnesses.  One article, released on May 12, 2009 references grand jury subpoenas issued to the Town of North Hempstead and Nassau County.  *See* Robert E. Kessler, *Feds push in Corbin probe*, Newsday, May 12, 2009, at A6.  The article does not reveal its sources, but includes comment from Peter Reinharz, Nassau County's Managing Attorney, who would have no involvement with the grand jury proceedings.  Whether the recipients of these subpoenas elect to discuss them with the media is beyond the control of the Government.  Also, according to the article, spokespersons for the United States Attorney's Office and the FBI declined comment.

Further, the press release issued by the Office of the United States Attorney for the Eastern District of New York on May 6, 2009 references the criminal complaint against Corbin, but is silent as to any grand jury indictment.  Accordingly, the Court finds that Corbin has not shown a violation of Fed. R. Crim. P. 6 by the Government.

*See In re Dow Jones & Co., Inc.*, 842 F.2d 603, 610–11 (2d Cir. 1988) (upholding trial court's finding that restraint on trial participants was necessary to the conduct of a fair trial where information regarding identity and testimony of grand jury witnesses had been leaked to the media).  Accordingly, having failed to make any factual allegations to sufficiently support a Rule 6 violation, Corbin's request for a hearing on the issue of a Rule 6 violation is denied.

In addition, the Court notes that it is uncertain of its authority to declare a violation of the New York State Rules of Professional Conduct outside of the context of a disciplinary proceeding.  Nevertheless, Rule of Professional Conduct 3.6 provides that:

> (a) A lawyer who is participating in or has participated in a criminal or civil matter shall not make an extrajudicial statement that the lawyer knows or reasonably should know will be disseminated by means of public communication and will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter.
>
> (b) A statement ordinarily is likely to prejudice materially an adjudicative proceeding when it refers to a civil matter triable to a jury, a criminal matter or any other proceeding that could result in incarceration, and the statement relates to:
>
> > . . .
>
> > (4) any opinion as to the guilt or innocence of a defendant or suspect in a criminal matter that could result in incarceration;
> > (5) information the lawyer knows or reasonably should know is likely to be inadmissible as evidence in a trial and would, if disclosed, create a substantial risk of prejudicing an impartial trial; or

(6) the fact that a defendant has been charged with a crime, *unless* there is included therein a statement explaining that the charge is merely an accusation and that the defendant is presumed innocent until and unless proven guilty.

(c) Provided that the statement complies with paragraph (a), a lawyer may state the following without elaboration:
• • •

(7) in a criminal matter:
(i) the identity, age, residence, occupation and family status of the accused;
(ii) if the accused has not been apprehended, information necessary to aid in apprehension of that person;
(iii) the identity of investigating and arresting officers or agencies and the length of the investigation; and
(iv) the fact, time and place of arrest, resistance, pursuit and use of weapons, and a description of physical evidence seized, other than as contained only in a confession, admission or statement.

• • •

(e) No lawyer associated in a firm or government agency with a lawyer subject to paragraph (a) shall make a statement prohibited by paragraph (a).

New York Rule of Professional Conduct 3.6 (adopted April 1, 2009)(emphasis added).

Southern/Eastern District of New York Local Criminal Rule 23.1, entitled *Free*

*Press-Fair Trial Directives* sets forth similar requirements and provides that:

(a) It is the duty of the lawyer or law firm, and of non-lawyer personnel employed by a lawyer's office or subject to a lawyer's supervision, private investigators acting under the supervision of a criminal defense lawyer, and government agents and police officers, not to release or authorize the release of non-public information or opinion which a reasonable person would expect to

be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice.

(b) With respect to a grand jury or other pending investigation of any criminal matter, a lawyer participating in or associated with the investigation (including government lawyers and lawyers for targets, subjects, and witnesses in the investigation) shall refrain from making any extrajudicial statement which a reasonable person would expect to be disseminated by means of public communication that goes beyond the public record or that is not necessary to inform the public that the investigation is underway, to describe the general scope of the investigation, to obtain assistance in the apprehension of a suspect, to warn the public of any dangers or otherwise to aid in the investigation, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the administration of justice.

(c) During a jury trial of any criminal matter, including the period of selection of the jury, no lawyer or law firm associated with the prosecution or defense shall give or authorize any extrajudicial statement or interview relating to the trial or the parties or issues in the trial which a reasonable person would expect to be disseminated by means of public communication if there is a substantial likelihood that such dissemination will interfere with a fair trial; except that the lawyer or the law firm may quote from or refer without comment to public records of the court in the case.

(d) Statements concerning the following subject matters presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice within the meaning of this rule:
. . .

(6) Information the lawyer or law firm knows is likely to be inadmissible at trial and would if disclosed create a substantial likelihood of prejudicing an impartial trial; and
(7) Any opinion as to the accused's guilt or innocence or as

18

> to the merits of the case or the evidence in the case.
> . . .
>
> (I) Any lawyer who violates the terms of this rule may be
> disciplined pursuant to Local Civil Rule 1.5.

Local Criminal Rule 23.1 (Last Updated May 26, 2009).

Finally, in this regard, the Department of Justice, which encompasses the Federal Bureau of Investigation, "has issued guidelines to it employees governing trial publicity. . . . DOJ employees are permitted only to release identifying information regarding the defendant, the substance of the charges, the identity of the investigating agency and the circumstances immediately surrounding an arrest."  Elkan Abramowitz and Barry A Bohrer, *White Collar Crime, Pretrial Publicity in Criminal Cases: Media Sound Bites, Justice?*, N.Y. L.J. (January 6, 2009) (citing 28 C.F.R. 50.2).  The regulation provides that "[d]isclosures should include only incontrovertible, factual matters, and should not include subjective observations." 28 C.F.R. 50.2(b)(3).  Further, the regulation cautions that DOJ personnel should refrain from making "[a]ny opinion as to the accused's guilt, or the possibility of a plea of guilty to the offense charged, or the possibility of a plea to a lesser offense."  28 C.F.R. 50.2(b)(6)(iv).

The defendant contends, on information and belief, that as soon as the criminal complaint and affidavit were sworn to before a Magistrate Judge, copies of the same were faxed, e-mailed and distributed with press releases containing statements by the United States Attorney, among others.  The Court interprets this allegation to mean that copies of the complaint and affidavit were distributed to the media by the

Government prior to Judge Lindsay's order unsealing the record. However, the defendant fails to provide factual support for this contention. The only quotation the defendant cites in support of this contention is from an article in the *Westbury Times*, which in turn quotes the press release issued by the United States Attorney's Office for the Eastern District of New York on May 6, 2009, the date that the matter was unsealed.

With respect to that press release, it states the defendant's position in the legislature; the nature of the complaint; and summarizes the factual allegations set forth in the complaint. In addition, the Court has been presented with two versions of the release. One version contains a footnote, which states "The charges contained in the complaint are merely allegations, and the defendant is presumed innocent unless and until proven guilty." The other version, apparently printed from the United States Department of Justice website, omits the required statement.

Moreover, the press release includes statements made by the United States Attorney and the FBI Assistant Director-in-Charge. These statements are as follows:

> "The defendant violated the law by failing to file truthful federal tax returns - an obligation of all taxpayers, including elected public officials. He then compounded his crime by lying to federal agents to cover his tracks," stated United States Attorney Campbell. "The defendant will no be held to account." Mr. Campbell extended his appreciation to the FBI and IRS, the agencies responsible for leading the government's investigation.
> FBI Assistant Director-in-Charge Demarest stated, "The people rightly expect their elected representatives at all levels of government to behave honorably, or at a minimum, lawfully. This

defendant put self-interest above public service.  Public confidence
in government depends on accountability for misconduct."

Press Release, United States Attorney Eastern District of New York, May 6, 2009, at

2.

These statement may violate the disciplinary rules by offering opinions as to

Corbin's guilt.  In ruling in this criminal case, it is not my obligation to determine such

matters involving the Rules of Professional Conduct.  Instead, it is the Court's

obligation to determine whether the press release has compromised this criminal

proceeding and the future trial.

The Court finds that the defendant has not shown that the press release has so

permeated the public as to have hindered the ability of the Court, probably some six

months or more from now, to impanel a fair and impartial jury in this case, especially

in light of the size of the jury pool in this huge district and the searching and

mitigating tools available to ensure a fair and impartial jury.  Accordingly, even if the

Court has the authority to rule on potential violations of the ethical rules outside of the

context of disciplinary proceedings, it denies the petitioner's request for an

"immediate hearing" on this subject.

<u>C.</u>     <u>As to Future Government Comment</u>

The petitioner further seeks to restrain the United States Government from issuing press releases, mug shots or "perp walk" photos, videos or images of the defendant in handcuffs, as well as from issuing information other than "pedigree information" except as directed by Court order.

Where a restraint is placed on parties to an action, rather than on the reporting activities of the media, either the speaker or the media may object to such restraint. *Dow Jones*, 842 F.2d at 607 ("'[W]here a willing speaker exists, . . . the protection afforded is to the communication, to its source and its recipients both.'" (quoting *Virginia State Bd. Of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976).  Here, both the Government and Newsday and News 12 have objected to Corbin's motion to limit future Government comment to "pedigree information."  The Government contends that the issue is not ripe for adjudication as it has not and does not intend to hold any press conference in connection with this case prior to any trial that may take place.

Similar to the First Amendment requirements concerning prior restraints on media activities set forth in *Nebraska Press*, prior to issuing a restraint on the speaking activities of parties to an action the Court must determine "whether there is a 'reasonable likelihood' that pretrial publicity will prejudice a fair trial."  *Dow Jones*, 842 F.2d at 610; *see also Gentile*, 501 U.S. at 1075, 111 S.Ct. 2720, 115 L.Ed.2d 888

("We agree with the majority of the States that the "substantial likelihood of material prejudice" standard constitutes a constitutionally permissible balance between the First Amendment rights of attorneys in pending cases and the State's interest in fair trials.").  In determining whether prejudice is likely, the court must examine the "nature and extent of the pretrial news coverage" and must "explore whether other available remedies would effectively mitigate the pretrial publicity." *Dow Jones*, 842 F.2d at 610, 611 ("[E]ach [alternative] must be explored and ultimately rejected as inadequate-individually and in combination-as a remedy for pretrial publicity before a restraining order is entered."); *see also United States v. Salameh*, 992 F.2d 445, 447 (2d Cir. 1993) ("[T]he limitations on attorney speech should be no broader than necessary to protect the integrity of the judicial system and the defendant's right to a fair trial.").

The defendant has pointed to no particular statement or topics that he wishes to restrain.  Instead, the defendant seeks generally to prohibit the Government from disclosing information other than "pedigree information."  The defendant's generalized assertions are insufficient to establish a reasonable likelihood of prejudice or of denying a fair trial.  *See Salameh*, 992 F.2d at 447 (reversing restraining order of the district court that was a "blanket prohibition" on matters concerning the case rather than a narrowly tailored restriction "no broader than necessary" to protect the rights of the defendants to a fair trial).   The Court presumes that the Government, its attorneys,

agents and investigators are aware of and will comply with their ethical obligations concerning trial publicity.

Further, as noted above, the population of this District, which extends from the Goethals Bridge to Montauk Point, along with the alternative remedies available to the Court in testing the impartiality of prospective jurors provide sufficient safeguards to protecting Corbin's Sixth Amendment rights in this case. Accordingly, a restraint on Government speech at this time is not warranted.

## III.   As to Corbin's Motion to Dismiss the Complaint

Finally, the Court denies Corbin's motion to dismiss the charges and seal the record because he has failed to show that after reading or hearing the publicity in issue "the resulting conclusion of guilt in the minds of the general public [is] practically certain." *United States v. Capra*, 501 F.2d 267 (2d Cir. 1974) (affirming denial of motion to suppress an indictment for lack of established prejudice though members of the press were permitted to attend pre-arrest briefings of the police as well as accompany the police to the defendant's house on the night of his arrest). In fact, the defendant has failed to establish that the publicity in this case will hinder, in any way, the Court's ability to impanel a fair and impartial jury. Further, with trial many months away, the Court finds that whatever negative pretrial publicity has been generated in this case, and whatever violation of the disciplinary rules may have occurred, the defendant has failed to show a widespread public perception of his guilt.

In any event, the Court notes that much of the press and publicity surrounding this case was generated by the defendant and his counsel.

## IV.     Conclusion

For the forgoing reasons, it is hereby

**ORDERED**, that the defendant's motion to enjoin, restrain and "stop" Newsday, News 12 and the United States Government from issuing press releases, mug shots, or "perp walk" photos, videos or images of the defendant in handcuffs is denied; and it is further

**ORDERED**, that the defendant's motion to permanently enjoin the United States Government from conducting "perp walks" or issuing other information of the defendant aside from pedigree information and except as directed by the Court is denied; and it is further

**ORDERED**, that the defendant's motion that the Court conduct an immediate hearing to determine whether Rule 6 of the Federal Rules of Criminal Procedure has been violated and whether the New York Rules of Professional Conduct § 3.6 had been violated is denied; and it is further

**ORDERED**, that the defendant's motion for an order holding the United States Government in contempt pursuant to Federal Rule of Criminal Procedure 6(e)(7) is denied; and it is further

**ORDERED**, that the defendant's motion to dismiss the charges and seal the record is denied; and it is further

**ORDERED**, that decision  is reserved on the defendant's motion for a certificate of appealability of this Order.

**SO ORDERED.**

Dated: Central Islip, New York
          June 1, 2009

_/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge